Will the argument next in Cosey v. Lilley, 20-1916. Glenn Garber for Archie Cosey and me along with Rebecca Friedman of the Exoneration Initiative are seeking habeas relief for an innocent man. This case raises a number of important issues for this court. One is the existence of a freestanding claim of actual innocence. The application of 28 U.S.C. 2244 B.1.2b, which is the miscarriage of justice exception for successive petitions. And the issue here is how that applies when a freestanding claim of actual innocence is raised. It also addresses the practical meaning of an analysis of clear and convincing evidence of innocence. There is a guilty plea in this case. So we also address the significance of a guilty plea in a clear and convincing analysis and clear convincing evidence analysis regarding innocence. And I would just point out that there was an amicus brief that was filed by Akin Gump on behalf of the Innocence Project and Centauri Ministries, which raises the freestanding claim of actual innocence. And also the relevance of a guilty plea in innocence cases. Now, there is no doubt that Archie Cosey raised a meritorious claim of innocence. Essentially, there is no witnesses left in this case that the prosecution can rely upon. The key witness, Janet Hutchins, recanted. Chris Ortiz, who is the one witness who I guess still remains, provided a version of events at trial that are impossible under the forensic evidence. The forensic evidence shows that the decedent, Mr. Williams, was shot from across the street in fire that couldn't have been related to a shooting by Mr. Green, who was one of the co-defendants. And it was Green's shooting that the theory against Cosey was predicated on. So the case, though, did the forensic evidence exclude the possibility that the shooting occurred in the way that the government describes? So that is, I guess, one of the legal problems that we raise, which is not a courted deference because it's legal in nature. What the state court says and the district court upholds is that because it is technically possible that the decedent still could have been shot by Green, even though it's totally inconsistent with how their only witness who remains says he was shot, therefore, it's not clear and convincing evidence of innocence. Now, that is a legal problem, and I would urge the court to recognize that the standard is not impossibility. The defendant should not be put in a position where he has to show that it is impossible for him to be guilty to prevail on an actual innocence claim under freestanding or in a gateway context. And there is case law on this. It is gateway case law because that is our book that we have to read to understand a freestanding claim or a clear and convincing claim. But it's Ruiz. It's Doe. It's Schlupp. It's Haas. All of those cases, those are two court of appeals cases in this circuit and two Supreme Court cases that talk about it's not absolute certainty. And here, the forensic evidence was overwhelmingly in support of Cozy's innocence claim. And I think, and when I'm thinking about this case, I mean, it's like the state court said. And I guess this goes to the guilty plea context, how this all applies, where there was a guilty plea. I know here that you've got – because there are co-defendants that went to trial, and there's a lot of the pieces filled in. But if that weren't the case and there were a guilty plea, how would a freestanding actual innocence claim even apply to revisit a plea? Well, one of the arguments that the state makes is that because there's a guilty plea, it's such overwhelming evidence of guilt. Therefore, he can't make out a claim of – or a case of clear and convincing evidence of innocence. That is not true under any law that – or any cases that I've reviewed, and that's certainly not the law in this circuit. I mean it's Rivas, it's Doe, and there's obviously other cases, but guilty pleas have to be looked at factually. And what happens is – and this happened below – there's a conflation of, well, it's knowing involuntary. Therefore, it must be strong evidence of guilt. But when you're dealing with factual innocence, which is a fact-based analysis, you have to look at the circumstances under which Cozy pled guilty. And this was by no means one of those clear-cut guilty pleas. I mean he was hesitant. He moved to withdraw the guilty plea at the sentencing, which was shortly after the plea was taken. I thought he didn't argue that it was involuntary. Excuse me? I thought he did not argue that his plea was voluntary. No, he did not argue that it was involuntary. And what I'm saying, and maybe I misspoke, is that those are two different analyses. What gets conflated by the state court and the district court is this knowing involuntariness analysis and what that means in this context. That's a different analysis. We're not saying it's involuntary, therefore the plea should be vacated. We're saying the conviction should be vacated because he's actually innocent, and there are fact-based reasons why he pled guilty despite his innocence. Maybe my question is more conceptual. The state didn't fully develop the record as to your client because he pled. And so to revisit that in a freestanding actual innocence claim with new evidence, supercant testimony, whatever it might have been, sort of doesn't make sense to me because it's going up against something that wasn't fully developed. Does that make sense? Yes. But in this case, there was the trial of Green and Duchesne that is part of the 440 record that tells the story about the weakness of the prosecution's case and the impact of the new evidence of innocence. There was a full 440 hearing in state court where innocence was litigated. So because – merely because Cozy took a plea – I don't think the record is what it would be in your typical case if it was just a single defendant taking a plea. So your argument, it sounds like, is that here, because the plea was last – the day before, and then because we have so many pieces from his co-defendant's trial, it's a little bit different than if the plea had been earlier in their work. Yeah, a bare record where there was just a plea. We have a full-fledged 440 hearing where all this was put under the microscope. It's really the 440 hearing. It was – excuse me? It's really the 440 hearing, which makes it a little bit of a different – Yeah, absolutely. I mean, a lot of these cases are summarily denied, and then we work through habeas, and then we come here with a very short record. We don't have that in this case. And here, the other issue and really the key, I think, for Cozy was that David Bobbitt, a witness, was going to testify for him. And on the eve of the trial of Duchesne and Green, it became clear – which was when Cozy was going to go to trial around that time – it became clear that he was going to assert his Fifth Amendment privilege, and that got pulled away from him. And that's part of the narrative as to why he pled guilty despite his innocence. And one of the things that's addressed in the amicus brief very, very effectively is that guilty people plead – I mean innocent people, I'm sorry – plead guilty. It is not an uncommon occurrence, and the DNA exonerations that we've been following for the last 30 years shows that innocent people plead guilty for reasons associated with getting out of a very, very uncertain situation, the lack of evidence that they think that they could rely upon. I mean here – and I don't want to necessarily bring Leslie Crocker Schneider into it, but I will a little bit – I mean her nickname is 25 to Life. She was a scary person. And that certainly, I'm sure, was a factor coupled with the fact that a witness was pulled out from under him and that he had been – and there's no dispute – had been asserting his innocence all along and had wanted to assert an alibi from Yolanda Summers. So it wasn't like he wasn't saying or pounding the innocence drum before he got to that withdrawal of a plea. Now, I just want to talk about the forensics again because I – Summers had not refused to testify for him at trial, had she? No, no. And she was – was she the only alibi witness? Well, there's also Donald Anderson who testified at the 440 hearing and dovetails with what Yolanda Summers testified to at the 440 hearing, which is that Cozy was running toward the shooting, not running away from the shooting. And by the way, Donald Anderson was credited by the state court. The state court rejected Yolanda Summers out of hand for reasons that I think are legal error. There was no factual support for this claim that she was going to get some sort of financial incentive if he was exonerated. Yet the court just, out of whole cloth, puts that in. When's the first time Anderson's version of the events was set forth? That surfaced many years later at the 440 hearing. So Yolanda – so actually I think that helps Cozy tremendously because Yolanda Summers – and the fact that he didn't rely on her exclusively. When he's making the decision to take a plea, he wants an independent person like Bobbitt. It makes perfect sense. Yolanda Summers was the mother of his two children, and that alibi would have easily been shot down by a jury, and I think I would have advised my client that's not enough. You need more. And without Bobbitt, the rug gets pulled out from under him. What is the evidence of how far his home or where he was with Ms. Summers is from the brownstone? It's close. How close? It's across the street and a half a block away. So it's a block and a half away in essence. Across the street. An east-west block. Excuse me? An east-west block. Yes, yes. Those of us who have lived in Manhattan know this. So it's still an alibi. I don't agree with that concept. It's still an alibi. I mean obviously you don't get sucked in sometimes into a case unless you're something close. You're connected or at least tangentially connected. But anyway, what I was going to say about Yolanda Summers is that what she said, had been saying all along that she was this alibi, happens to, by the way, be corroborated by Donald Anderson at the 440 hearing many years later. And I think that that speaks to the credibility of Yolanda Summers and what the court did, the state court, is reject her out of hand. Is there something on the record I think that there is about the amount of time that elapsed between the two shootings? So it was the amount of time it took to walk a city block and a half. I think that was how it came out from Chris Ortiz and from Janet Hutchins, who, by the way, their credibility is questionable, but that timeline. So a little less than a block away. So I'm just asking Ms. Friedman because she's got this strong sense of these facts in this very big record. But anyway, it wasn't under the defense's – the defense said it happened essentially very close in time. There were two shootings. There was one shooting, and then what happens is there's firing into the building, and that is when Williams gets shot. Under the government's or the state's theory or trial, it would have been minutes apart. Although the state court decision says there's no clear timeline, if you look at Ortiz and Hutchins' testimony, you want to still credit that. It was not that far apart even under their scenario. But it's our contention that it was all one shooting. It was shooting at the building. No, no, I understand. So obviously, I mean, I think that that is important. But the – what I wanted to say, I guess, and I could get into all the different pieces of evidence of innocence because there's many independent pieces of evidence of innocence that cross-corroborate each other. But the problem I think that this court should have with the state court's analysis under clear and convincing evidence and the district court's upholding of that is that they're looking at things in isolation. Or the state court looked at things in isolation. It didn't say, hey, we got this very powerful forensic evidence for Mr. Cozy, and we have Ortiz, who is the only remaining witness, who is now out of the case because of that forensic evidence. Hutchins, the other supposed eyewitness, is gone because of her recant and also because she lied in the grand jury in a way that cut to the heart of her credibility and also impugned the integrity of the prosecution's case. And just those three pieces of evidence of innocence collectively is more than clear and convincing evidence of innocence. And the court below, the state court, didn't look at it that way. It looked at it in isolation and said, hey, let's analyze the forensic evidence independently, essentially what it did. And because there's a possibility that he still could be guilty, even in light of this forensic evidence, and we're going to do these mental gymnastics and we're going to come up with a scenario to conform with the forensic evidence and put him flat on the ground and put the shooter down on the ground at the same level in this unnatural position. Then it's possible that it could have happened generally the way the prosecution claims. That can't be OK. And I think that – and you have witnesses that also testify that the state court rejects out of hand who corroborate – well, give an account that's consistent with that forensic evidence. So it's a holistic analysis. Under Schlepp, under House, all the cases talk about that. You look at everything old and new. You ascertain the weakness of the prosecution's case. You plug the new evidence in and you look at it together. And if you don't do that, that is a legal problem that is not entitled to deference, even though under 2254E there's a deference standard for state courts. If it's a legal error, the analysis of the evidence, whether it's clear and convincing, is a flawed analysis. That is a legal conclusion for this court, and this court can rely on that to create the path for justice that Arch Cosey desperately needs and is entitled to in this case. There's other things that I want to talk about. If you want to talk about the due process claim, I can go into that. I'll give you one minute. Okay. So the one thing that is very interesting is whether or not a freestanding claim of actual innocence not only exists but whether it could be grafted into the miscarriage of justice exceptions under 2244B2B2. And the answer, at least in our papers, and I think it's interesting to me because it's compelling, is that a freestanding claim of actual innocence not only exists but it's either a due process violation or an Eighth Amendment cruel and unusual punishment violation. It's constitutionally based, and therefore it can be part of that miscarriage of justice exception for successive petitions. So you're asking us to reject the interpretation of the Tenth and Eleventh Circuits on that, right? Yes. The innocence plus standard I don't think is a fair standard. I don't think it is consistent with the legislative intention. When you say it's not – so the text, of course, trends against you. Well, I don't know. I mean it says but for constitutional error. I think that's the language in it. It's something like that. But that doesn't mean that a – if a freestanding claim of actual innocence exists, which we urge you to find in this case, which is a threshold question for the court. Well, there is the Supreme Court original jurisdiction over such claims. Yes, and what we say is that that is – practically speaking, that is not a – that would be an effective suspension of the writ. I mean isn't that a matter for Congress to fix? I mean I hear you. The Supreme Court can only take so many habeas cases on original jurisdiction. But that doesn't – that's not an invitation to the appellate court system to shoulder the rest. As the amicus points out, there's only been three cases where the Supreme Court has accepted the cases on its original jurisdiction since 1963. And it's just not designed to effectively deal with it, and it's not consistent with the statute. I mean we quote Orrin Hatch, who spoke on the floor when 2244 was being enacted. And he said this is – people who are innocent are entitled to relief under this statute, under this miscarriage of justice exception, and to take out a freestanding claim of actual innocence from it. If you have one here, which we do, it would only make sense that it's an Eighth and Fourteenth Amendment and or violation that would be constitutional in nature that would enable you to get through that. Even with Innocence Plus. But anyway, there's a due process violation that I don't know if I'm going to be able to get to. But it is about obviously not providing Brady material, the perjury of Hutchins in the grand jury to the defense, and Cozy moves to withdraw his plea. Obviously his innocence is a critical part of that motion, and that evidence is withheld. And that is Brady material that should have been provided to him before – well, in the context of his motion to withdraw the plea, and it wasn't. And therefore we contend that that is a due process violation that even if you don't want to graft freestanding actual innocence into 2244B2, that is another constitutional violation that has legs and that is another path to relief for Mr. Cozy. All right. I gave you three minutes. Thank you. I appreciate it. So you also reserve some time for rebuttal. We'll hear from Mr. Kress. Thank you very much, Judge Lolier, and may it please the Court, Stephen Kress on behalf of the respondent in this case. Archie Cozy is not innocent. He's not innocent of the murder of James Williams, and he is not innocent of first-degree conspiracy, which is another crime that he pleaded guilty to and for which he received the same 25 years to life sentence that he received for the murder conviction. And because the Petitioner is not innocent, he can't overcome either of the two procedural bars to habeas review that he currently faces, which are the statute of limitations in Section 2244D and the limits on successive – second or successive petitions in Section 2244B. Now, I'd like to begin with the Petitioner's guilty plea, which he concedes was constitutionally valid.  In his brief, he says, this is not a case where the plea is challenged on knowing or voluntariness grounds. That's page 50. And the appellate division in this case concluded it was voluntary. He didn't challenge that determination in his first habeas petition, and he didn't challenge it this time around. Does a valid plea of guilty foreclose habeas relief, even as a matter of second or successive relief? I believe it does, Your Honor. Where have we said that? So, Your Honor, the Supreme Court has said that when a person validly pleads guilty, he is thereafter precluded from contradicting the admissions that he made in his plea. And the Court just recently addressed that in Class v. United States, which is a 2018 decision. That case involved whether or not a guilty plea foreclosed the defendant from challenging the constitutionality of the statute under which he was convicted. And the Court held that it did not. But in doing so, the Court emphasized the Petitioner in that case, and I'm going to quote, does not in any way deny that he engaged in the conduct to which he admitted. And the Court was discussing that in the context of a previous decision from United States v. Sproce, where the Court again said, when you plead guilty knowingly and voluntarily, you can't then later on say, oh, by the way, I didn't do those things that I admitted doing. And I think in that case, or in this case, that is dispositive. If he had been allowed to withdraw his plea of guilty and had gone to trial, would the government have been able to admit the factual statements that he made in his plea allocution prior to withdrawal of the plea? I don't believe that we would have, Your Honor. I don't think so. But they certainly are relevant in the actual innocence analysis. But I don't know in a trial that we would have been able to. I'm not sure. So in determining whether any reasonable juror would have found him guilty beyond reasonable doubt or not found him guilty beyond reasonable doubt, the jury would not have had those statements to take into consideration? At a trial, no. I don't think they would. But I think in the actual innocence analysis, the rules of evidence don't apply certainly in the same way that they do at trial. That's what this Court mentioned in Hyman v. Brown a couple of years ago. So certainly plea admissions are absolutely relevant. I mean, I would argue, we have argued that they are binding in the case of a voluntary plea. But at the very, very least, even in cases where pleas are challenged, this Court and the Supreme Court has said that they are entitled to a strong presumption of verity. Well, at least the question that I would have is, following up on what we said in Hyman, is the guilty plea, that is, the elocution, a bit of evidence that we assess in determining whether no reasonable juror would, et cetera? Yes, it is, Your Honor. And where have we said that? You said that in Doe v. Menefee. In that case, the Petitioner had pleaded guilty. The site is 391 F. 3rd 147. And in that case, the Petitioner pleaded guilty. And this Court did consider his plea admissions in the context of concluding that he was not actually innocent. And in that case, the Court said that they were only presumptively true because he had challenged the validity of his plea. I would argue that in light of this Court's statements in Salas and in Simmons, which are cases we cite in our brief, that his plea admissions should be given conclusive effect. But at the very, very least, they are entitled to a strong presumption of truthfulness, which just has not been overcome here. And let me talk about the actual evidence in the context of what was presented at the trial of Duchesne and Green. Defense counsel mentioned that David Bobbitt was an independent witness. I could not be farther from that. He was Duchesne and Green's cousin. So he, and there's testimony about how they, you know, consider themselves family members. And he, of course, was a high-ranking member of this drug trafficking operation. He is absolutely not an independent witness. I would also like to talk about the timeline issue that the Court was discussing with Mr. Garber. So Chris Ortiz at trial testified that there was about a minute, was his exact testimony, between the first shooting in the hallway of the Brownstone and then the second shooting that occurred across the street. He said it took him about the time, it was about the time for him to get from the Brownstone to east to Lenox Avenue, which is almost a full city block. So the Brownstone is, I think, a building or two east of the corner of 123rd Street and 7th Avenue. And that would be plenty of time for Cozy to leave the Brownstone, cross 7th Avenue, and then be on his way back, which is where, at the time of the second shooting, which is where Donald Anderson says he saw him. He said he saw him, I think, in the middle of 7th Avenue, like where the island is. So I think that would be plenty of time for him to just cross the street, hear the gunshots, and turn around and start coming back. And let me speak about Donald Anderson for a moment. His testimony does not exonerate the petitioner or really corroborate Yolanda Summers' testimony. He never testified that he was watching the street the entire time. In fact, he testified that he was bending down to tie his shoes at one point. So Cozy could have walked right past him, and he would have never even seen him. And let me speak about Ms. Summers as well. More generally, let me just say that this Court has held that a State court's credibility findings are entitled to great, great deference on habeas review. In fact, they're entitled to a presumption that they are correct, and that can only be rebutted by clear and convincing evidence. And in this case, the State court determined, and she had these witnesses in front of her, she had Yolanda Summers in front of her, and determined she was not credible. And I think that is perfectly reasonable for the State court to have done. She's not only interested sort of as a matter of law in the sense that she's she was romantically involved with Cozy, but she gave patently absurd testimony in saying that, oh, well, she had no idea that he was involved in drug trafficking, even though her mother's trailer in South Carolina was shot up as part of a drug deal gone bad or in retaliation for drug trafficking activity. So I think the State court was perfectly entitled to discredit whatever testimony she gave. The same thing goes with David Bobbitt for the reasons that I mentioned before, and certainly for Janet Hutchins. Janet Hutchins' recantation was found to be incredible. Her recantation boiled down to this. I can't tell you a single thing about what happened on August 3, 1993. Don't remember anything. No idea. Oh, but I'm 100% sure that Cozy wasn't there. I mean, that is just not credible. And again, she was in front of the State court. The State court evaluated her and said, I don't believe what she's saying. But I do believe the testimony that she gave at trial. And I think it's important, one thing to note, at trial, she implicated Carl Duchesne, who was the leader of this organization. She testified at her hearing, and I think this is consistent throughout the record, she had no axe to grind against Carl Duchesne. She liked him. She thought that he had actually rescued her after Cozy and Chris Ortiz and Danny Green had kidnapped her. So she specifically said she has no axe to grind against him, and yet she implicated him in this murder. And so I think that is something that lends credibility to her testimony. I also want to talk about Chris Ortiz and the forensic evidence. The forensic evidence does not contradict Chris Ortiz's testimony at trial. The testimony at trial is perfectly consistent with that forensic evidence, with James Williams being in, if you want to call it a prostrate or a prayer position, where his torso is close to the ground, sort of at an angle. All of the experts agree the forensic, or the path of the bullet in his body would be consistent with him being in that position, and the hearing court did not conclude that he was not in that position. One other thing on that note that I think lends credibility to, further credibility to Chris Ortiz's testimony, the process, you know, I think everyone would agree, a layperson, anyone would understand. If Williams had been on his knees with his torso upright, it would be impossible to create the path of the bullet in his body. It would either go straight through his lower abdomen or be lodged there. Anybody would understand that. But at trial, the prosecutor argued in summation that the forensic evidence was consistent with Chris Ortiz's testimony, and he talks about that in his hearing testimony. I will direct the court to pages 1119 to 21 of the joint appendix. He argued at trial in summation that the forensic evidence was consistent with Chris Ortiz's testimony. You could not possibly make that argument with a straight face, certainly not anybody, but let alone an experienced homicide prosecutor. Couldn't make that argument with a straight face if he believed that James Williams was on his knees with his torso upright. And so I think that supports the idea. This is not some post hoc theory that we made up at the 440 hearing. This was the theory that was presented at trial, and it's what the jury found. So the forensic evidence that was developed for the 440 hearing, I think you're saying, is not inconsistent with the forensic evidence at trial? Yes, Your Honor. I'm saying it's the forensic evidence that was developed at the 440 hearing is, I think, consistent with the testimony from Chris Ortiz and Janet Hutchins, I should add, because she also corroborated his account of Williams being down at the time and then just kind of laying out as opposed to falling over if he had been upright. I think the forensic evidence is consistent with that testimony at trial of Williams being down. Were the experts asked that? Was that ever a question? What specifically? About the consistency with the testimony of Mr. Ortiz, for example. Yes. They were asked that question, and the experts ultimately all agreed that if Williams had been in a position where he was at an angle, they all agreed that the bullet trajectory would be consistent with him being in that position. They disagreed about how to read Chris Ortiz's testimony. I think some read it as saying, you know, as Williams being in an upright position, but I think you can certainly read it the other way, and that's the way we would read it. But, yes, they were asked that question, and I think ultimately they all agreed. And unless the Court has any other questions, I would just ask that the judgment be affirmed. Thank you very much. Mr. Garber. Yes. So the forensic evidence was not developed at the trial, and whether the prosecutor made an argument on summation that it was consistent with what Ortiz said or not, there was no proof of that whatsoever entered into evidence at the trial. And at the 440 hearing, which was the first time the forensic evidence was really put under a microscope, it clearly refuted what Ortiz said, which was that he was on his knees when he got shot. So my question then is the same one to you. Were the forensic experts asked, well, if his, that is, Mr. Williams' position was, as Mr. Ortiz said, just without quibbling about it, is that consistent with the evidence, the forensic evidence? No. I don't think that that, and I think that the Court found that it was a, the forensic evidence was so problematic she granted ineffective assistance of counsel for the two trial defendants. She granted relief on that for their failure to call a forensic expert at trial to explain it. There is no way the bullet trajectory, the way the bullet went through his body, can be consistent with him being on his knees. There are some tortured arguments. Can you show me where in the record any expert said that? And you can keep going. Well, okay. And I, that's fine. And so, that's fine. Okay. And just so you know, and I just want to repeat what I said in my opening remarks, was that he would have had to have been on his stomach, and then the shooter would have had to have been down below, low on the ground, which was not what Ortiz said. So if it was that way, it could have happened, but that is not consistent with what Ortiz said about how the shooting took place. And the way the bullet passed through is consistent with shooting across the street, which was the shooting on the bullets being shot at the building, and then a bullet going through the door and hitting Williams, who would have been crouching down. So that's what that forensic evidence is, and we're trying to find hopefully that nugget from an expert at the 440 hearing. But these findings, which we think are very good for us, and we're not contesting the viability of those findings by the state court, are clear that this was highly probable that it was a shooting across the street and highly unlikely that it was the way that it could have happened. It could have been a shooting by Greene in that lobby. But there's a few other things I just want to point out, and I think this might have been addressed, but a guilty plea does not have conclusive effect on an actual innocence claim, either under gateway or freestanding actual innocence analysis, and I think that that was maybe made clear. Do you agree that a plea allocution can be considered in determining whether no reasonable juror would find the petitioner here guilty? It's a fact-based analysis, as we were discussing before. It's not obviously— No, I understand, but it could be considered. Of course it could be considered. We're not saying it couldn't be. It's probably not in column A, which is the Archie Cozy column, and it's in column B, which is the government's column. Yet it still has to be looked at critically, though, and the circumstances under which he pled have to be vetted, and they were. And the fact that it was 11th hour and the fact that Bobbitt was taken away from him, all that stuff that we talked about before is a fact-based analysis that goes to that and shaves down the impact of it. So that's, I think, important. Donald Anderson, who was credited by the state court bending down to tie his shoes, therefore it's possible that Cozy could have been running from the building before he came back. I mean, this is, again, a flaw in the state court's reasoning. What the terminology the court uses is it does not preclude the possibility. That Cozy could have ran from the building, been part of the Williams killing, and then run back to the building after the other shots were fired. I may or may not in candor agree with the way that we framed it, but in Hyman we seem to have more or less framed it that way. So we seem to have, and this is not quite the panel's words, but we seem to have required affirmative evidence of exoneration. Well, I argued Hyman, and I lost. But Hyman did not. That was a useful bit of information. You're bringing it up. You're reminding me. But Hyman, there was an alibi. And one of the things that was stated at the oral argument was there was no alibi in this case. There is an alibi here that's interwoven with the innocence narrative. So there is affirmative evidence of innocence that should have been credited by the court. Now, the court chose, for reasons that we argue are legally wrong, to discount Yolanda Summers wholeheartedly, even though she was corroborated by Donald Evan, I mean, Donald Anderson. So there is affirmative evidence, but I would urge the court if this rises and falls on affirmative evidence, the court should deviate from Hyman. That rule, if it is a rule, is just too hard of a burden. If you completely destroy the government's case. That's why I started my question by saying I may or may not agree with the framing, but Hyman is, you know, seems to me to be binding precedent. Well, I don't know. I mean, I think if you ride that horse all the way to the finish line, how can it be? If you completely destroy the state's case, meaning there's nothing left, how can that not be clear and convincing evidence of innocence since that analysis has to be filtered through a reasonable doubt standard? Schlupp, House, Rivas, Doe, all say that. But we do have affirmative evidence of innocence in this case, so there is a distinction between us and Hyman if the court wants to accept that rule. But I think that rule is unworkable with the definition of clear and convincing evidence. I think Ms. Freeman may have something for us here. Yes. She mentioned that Hutchins said that the shots came from outside, which would tend to establish that they were from across the street and not in the lobby. Now, the lower court discusses that and ultimately minimizes the impact of that testimony. My question was about the forensics experts. Oh. Okay, yes. It's actually – sorry about that. It's appendix pages 325 to 332. I'm sorry? 325 to 332. And 988 to 990. That is the testimony of the forensic experts at the 440, addressing – well, stating that it could not be – the way that the path of the bullet went through Williams could not be consistent with what Ortiz described in the trial. And I think the state court found as much, too. Special appendix at 8, the state court did. Okay. All right. Thank you very much. Thank you. We'll reserve the decision.